UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:

BRYAN A. LAMEY,                                                                 No. 14-13729 ta7

Debtor.

## OPINION

Before the Court are the following motions:

1. Debtor's motion to convert his case from Chapter 7 to Chapter 13, doc. 142;

2. The chapter 7 trustee's motion to approve a settlement with Los Alamos National Bank ("LANB"), doc. 147; and

3. The trustee's motion for turnover of tax refunds, doc. 128.

For the reasons set forth below, the Court will deny the motion to convert and grant the other two.

## I. FACTS

The following findings of fact and conclusions of law come in part from taking judicial notice of the dockets, in part from final hearings held on August 11, 2017, and in part from the trial evidence in adversary proceeding no. 15-1029, captioned *Los Alamos National Bank v. Bryan A. Lamey* (the "Discharge Adversary").[1] To the extent any finding of fact may be construed as a conclusion of law, it is adopted as such, and vice versa.

Background. The debtor Bryan Lamey is a certified public accountant. He worked for Arthur Andersen from 1992-1995 and then started his own accounting firm (Chavarria, Dunne and

---

[1] At a status conference on June 23, 2017, the Debtor, the Trustee, and LANB consented on the record to the Court using the evidence presented at that trial in ruling on the motion for turnover.

Lamey), which specialized in litigation support. Before March, 2010, the owners sold the firm to a regional accounting firm (Clifton Gunderson), receiving millions of dollars in exchange.

<u>State Case</u>. On August 25, 2014, LANB filed a collection and foreclosure action against United Real Estate Holdings, LLC and others, captioned *Los Alamos National Bank v. United Real Estate Holdings, LLC, et al*, No. D-307-CV-2014-1754 (the "State Case").

<u>Bankruptcy Case</u>. On December 30, 2014, Debtor filed this chapter 7 case. On the petition date, the Debtor had the following unsecured debts:

| | |
|---|---|
| LANB: | $1,650,000; |
| Ann Rippberger: | $250,000 |
| Robert Maese: | $765,681 |
| Vision Bank | $21,496.21 |
| Aria Resort & Casino | $59,154.34 |
| Dana Lamey | $50,000 |
| Global Payments: | $10,000 |
| RLI Insurance: | $10,062.13 |
| Total: | $<u>2,861,393.68</u> |

Debtor's amended Schedule I states he was unemployed on the petition date.

On February 17, 2015, the chapter 7 trustee, Linda Bloom, issued a report of no distribution. The report was withdrawn on February 2, 2017 by the successor chapter 7 trustee, Ed Mazel (the "Trustee").

<u>Discharge Adversary</u>. LANB filed the Discharge Adversary on March 27, 2015, seeking to deny Debtor's discharge and for a ruling that Debtor's obligations to LANB were nondischargeable.

<u>Lender Liability Counterclaims</u>. On April 19, 2016, United Real Estate Holdings, LLC, United RV Holdings, LLC and United Real Estate Las Cruces, LLC (together, "United Entities"), filed counterclaims against LANB in the State Case. The counterclaims alleged negligence, fraudulent and/or negligent misrepresentation, fraudulent concealment or constructive fraud,

failure to disclose material facts, fraud, and other claims. The counterclaims are based on the fact that a certain "KZRV mortgage," which encumbered a parcel of real estate purchased by one of the United Entities, was not released when the purchase closed. LANB financed the purchase, and was supposed to get a first mortgage on the subject property. It got a second mortgage instead, behind the KZRV mortgage.

The Debtor owns a 51% interest In United Real Estate Holdings, LLC and United RV Holdings, LLC, which own the United Entities.

On January 27, 2017, the Debtor filed counterclaims against LANB in the Discharge Adversary, asserting claims similar to the United Entities' counterclaims. On March 14, 2017, the Debtor filed amended schedules, disclosing for the first time the counterclaims and debtor's interest in the United Entities' counterclaims.

On April 18, 2017, the Court ruled that the bankruptcy estate owned Debtor's counterclaims, and granted the Trustee permission to intervene in the Discharge Adversary and assert the counterclaims.

On May 5, 2017, the Court entered a partial summary judgment in favor of LANB, docs. 137 and 138, ruling that the debtor had constructive notice of the KZRV mortgage. The ruling significantly undercut the estate counterclaims against LANB, all of which were based on the Debtor's alleged ignorance of the KZRV mortgage. The Trustee recently testified that, in his opinion, the cost of fully litigating the counterclaims through trial would be between $30,000 to $60,000, with a low likelihood of success.

On March 7, 2017, the Court set the Discharge Adversary for trial on June 6, 2017. Debtor filed the motion to convert on May 17, 2017, about two and a half years after the petition date.

Denial of Discharge. On July 21, 2017, the Court entered judgment in the Discharge Adversary, denying Debtor's discharge.

Findings about Tax refunds. On October 14, 2014, Debtor filed his 2013 federal income tax return, asserting that he was due a $8,538 refund. Debtor did not disclose the refund on his bankruptcy schedule B. Debtor received the refund on May 26, 2015, but did not tell the trustee. Nearly two years later, Debtor amended his schedule B to disclose the existence and payment of the 2013 tax refund. The disclosure misleadingly attributes the 2013 tax refund to net operating losses generated by the United Entities (see the discussion below).

On December 29, 2014, the IRS notified Debtor that it was auditing his 2011 federal income tax return. Debtor hired CPA Don Miller to represent him in the audit. Debtor and Miller realized that the United Entities had generated substantial net operating losses ("NOLs") in 2013. Because the United Entities' profits and losses passed through to its members, the NOLs would benefit Debtor and the Maeses. Further, the NOLs could be carried back to 2010. On or about April 6, 2015, Miller filed the 2013 federal and state income tax returns for United Entity holding companies, and also issued K-1s to the members.

Based on the K-1s, Debtor filed amended state and federal tax returns for 2010, 2011, and 2013, which generated the following refunds:

| Return | Refund amount | Date paid |
|---|---|---|
| 2010 Federal | $50,464 | 2/22/16 |
| 2011 Federal | $54,974 | 10/12/16 |
| 2013 Federal | $5,019[2] | 10/02/15 |
| 2013 New Mexico | $3,324 | Unknown day or month, 2015 |
| 2014 Federal | $14,028 | 4/22/15 |
| 2014 Oklahoma | $3,098 | 4/20/15 |
| Total | $130,090 | |

---

[2] This is in addition to the refund paid on June 1, 2015.

All of these refunds were the result of pre-petition losses. Tax refunds that are paid post-petition, but the result of pre-petition losses, are estate property.

All the refunds were paid to Debtor and deposited in his bank accounts. He did not notify the trustee of the payments, nor turn the money over to the trustee. He apparently spent the refunds. Debtor's original bankruptcy schedules do not reflect any potential tax refunds.[3] Debtor amended his schedule B on February 13, 2015, but did not disclose any potential tax refunds. Debtor did not file a further amendment to Schedule B until March 14, 2017, at which time he disclosed three of the tax refunds, totaling $69,511. LANB exposed at least some of these omissions during a deposition taken before the March 14, 2017 amendments. Debtor's schedules as amended never accurately described the tax refunds he received. By April 6, 2015, he knew the extent of the NOLs, and that he would use them to amend his prior tax returns and obtain large refunds.

## II. MOTION TO CONVERT

### A. Conversion from Chapter 7 to Chapter 13; Bad Faith Exception

Section 11 U.S.C. 706(a) allows a debtor to convert a case under Chapter 7 to a case under Chapter 13 at any time. However, a debtor who has been found to have acted in bad faith forfeits his right under 11 U.S.C. 706(a) to convert his case under Chapter 7 to Chapter 13. *Marrama v. Citizens Bank*, 549 U.S. 365 (2007). Here, the Debtor acted in bad faith, as set forth in the Court's opinion entered on July 21, 2017 in the Discharge Adversary. Further, it is bad faith to seek to convert to chapter 13 in an effort to avoid the Court's denial of the discharge. Finally, it is bad faith to seek conversion in an effort to thwart the Trustee's settlement of the LANB counterclaims.

### B. Debt Limit.

---

[3] There is a disclosure that the two United operating companies have "NOLs and other potential tax-related benefits."

To be eligible for Chapter 13 relief, § 109(e) requires an "individual with regular income that owes, on the date of filing, noncontingent, liquidated, unsecured debts of less than $394,725 and noncontigent, liquidated, secured debts of less than $1,184,200."

On the petition date, Debtor was liable to LANB under a guarantee of a $1,650,000 debt to LANB. The debt went into default in March 2014, and was accelerated. At that time, Debtor became immediately liable for the debt as a matter of law, and his obligation to pay the debt became non-contingent and liquidated. *See WXI/Z Southwest Malls Real Estate Liab. v. Mueller*, 137 N.M. 343 (Ct. App. 2005).

The Debtor has total unsecured claims of $2,861,393.68. If all pending claim objections were sustained, the Debtor would still owe much more on the petition date than the $394,725 ceiling for unsecured debt.

    C.    <u>Regular Income</u>.

Section 109(e) requires that the debtor have regular income. The burden of establishing the regularity and stability of income is on the debtor. *In re Culp,* 545 B.R. 827, 840 (D. Del. 2016); *In re Sassower*, 76 B.R. 957, 960-61 (Bankr. S.D.N.Y. 1987).

The Debtor did not put on any evidence that he has regular income. His amended Schedule I, filed February 13, 2015, states he is unemployed. Throughout this case, the representations made regarding Debtor's employment have varied from unemployment to quite gainful employment. Because there is a question about whether Debtor has regular income, it was incumbent upon him to provide evidence of his eligibility. He did not do so.

    D.    <u>Conclusion</u>.

The Court's prior findings in the Discharge Adversary constitute findings of bad faith, such that Debtor is not eligible to convert to chapter 13. There are other indicia of bad faith as well.

-6-
Case 14-13729-t7    Doc 192    Filed 08/16/17    Entered 08/16/17 16:53:34 Page 6 of 11

Further, on the petition date Debtor's unsecured debt exceeded the unsecured debt limit of 11 U.S.C. § 109(e). Finally, Debtor did not provide proof of regular income. Therefore, the Court denies Debtor's motion to convert.

### III. MOTION TO APPROVE SETTLEMENT

#### A. The Proposed Settlement Agreement

Subject to Court approval, the Trustee and LANB have settled the estate's counterclaims against LANB, pursuant to which LANB would pay the Trustee $15,000.00 in exchange for (i) a complete release of liability under the counterclaims and any other pre-petition claims the estate might have against LANB, and (ii) the estate's interest in any of the United Entities' counterclaims, including any potential distribution from a recovery on those claims.

#### B. Applicable Standard; the *Kopexa* Factors.

This Motion is governed by Federal Rule of Bankruptcy Procedure 9019(a), which provides that "[o]n motion by the trustee and after notice and hearing, the court may approve a compromise or settlement."

Settlements and compromises "are favored in bankruptcy." *Korngold v. Loyd (In re Southern Med. Arts Cos.)*, 343 B.R. 250, 255 (10th Cir. BAP 2006). The purpose behind compromises "is to allow the trustee and creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims." *Id.* The Court must determine whether the settlement is fair, equitable, and in the best interest of the Debtor's estate. *Id.* The Court should approve the settlement unless it falls "below the lowest point in the range of reasonableness." *In re Brutsche,* 500 B.R. 62, 70-71 (Bankr. D.N.M. 2013); *In re Carson*, 82 B.R. 847, 853 (Bankr. S.D. Ohio 1987).

The Bankruptcy Appellate Panel for the Tenth Circuit established the following four factors (commonly known as the "*Kopexa* Factors")[4] that bankruptcy courts should consider in determining the propriety of a settlement for purposes under Bankruptcy Rule 9019:

A. The probable success of the underlying litigation on the merits;
B. The possible difficulty collecting a judgment;
C. The complexity and expense of the litigation; and
D. The interest of creditors in deference to their reasonable views.

The Court weighs the *Kopexa* factors as follows:

| Factor | Discussion |
|---|---|
| | |
| The probable success of the underlying litigation on the merits. | Favors the settlement. Debtor knew or should have known about the KZRV mortgage, since it was filed of record. Further, it is clear from the evidence that the mortgage was released because of a mistake on the title company's part (i.e. relying on KZRV's word that it would release the mortgage), not because of any improper motive by LANB. LANB had no reason to want to get collateral subject to a large prior lien. |
| The possible difficulty in collection of a judgment. | This factor favors settlement. Before the estate could collect any judgment, LANB would have the right to fully offset the amount owed by the estate. |
| The complexity and expense of the litigation. | This factor favors settlement. The trustee estimates that it would cost $30,000-$60,000 to try the counterclaims. That is substantially more than they are worth. |
| The interest of creditors in deference to their reasonable views. | This factor favors settlement. The only party that objected to the settlement is the Debtor, who likely will not receive any distribution from the estate. No creditor objected. |

The Court finds that the *Kopexa* factors strongly favor the settlement.

---

[4] *C.K. Williams, Inc. v. All Am. Life Ins. Co.* (*In re Kopexa Realty Venture Co.*), 213 B.R. 1020, 1022 (10th Cir. BAP 1997). *See also Am. Employers' Ins. Co. v. King Resources Co.*, 556 F.2d 471, 478-79 (10th Cir. 1977) (applying 10- factor test for approval of settlement); *Southern Med. Arts*, 343 B.R. at 257 n. 5 (recognizing that the *Kopexa* Factors collapse and take into consideration the 10-point test established in *King Resources*).

C. Conclusion.

This Court concludes that the settlement is fair, equitable, and in the best interest of the Debtor's estate. The estate's likelihood of getting a judgment on the counterclaims is low, and the cost to litigate them likely is high. The settlement will result in more money to the estate than pursuit of the counterclaims. The Court therefore will approve the settlement.

## IV. MOTION FOR TURNOVER

A. Section 542(a) Turnover Standards.

11 U.S.C. § 542(a) provides that: "an entity ... in possession, custody, or control, during the case, of property [of the estate] ... shall deliver to the trustee ... such property or the value of such property[.]" A debtor has an affirmative duty to turn over property of the estate, without first requiring a demand or turnover motion by the trustee. *Rupp v. Auld (In re Auld),* 561 B.R. 512, 518 (10th Cir. BAP 2017).

Parties who possess estate property at any point post-petition are required to turn it over to the trustee. If a party dissipated estate property, then he or she must then turn over the value thereof. *In re Ruiz*, 455 B.R. 745, 751-52 (10th Cir. BAP 2011). The evidence shows that all tax refunds were at one point deposited in Debtor's accounts post-petition.

Moreover, the Trustee need not show that all the tax refunds were deposited in Debtor's accounts, merely that Debtor had the right to receive the property post-petition. *Nichols v. Birdsell*, 491 F.3d 987, 990 (9th Cir. 2007); *In re Graves*, 609 F.3d 1153, 1158 (10th Cir. 2010) (§ 542(a) allows the trustee to obtain possession of property that the debtor has the right to possess).

B. Property of the Estate.

Debtor argues that the tax refunds are not property of the estate and therefore not subject to turnover. Section 541 provides that property of the estate includes "all legal or equitable

-9-
Case 14-13729-t7    Doc 192    Filed 08/16/17    Entered 08/16/17 16:53:34 Page 9 of 11

C. Conclusion.

This Court concludes that the settlement is fair, equitable, and in the best interest of the Debtor's estate. The estate's likelihood of getting a judgment on the counterclaims is low, and the cost to litigate them likely is high. The settlement will result in more money to the estate than pursuit of the counterclaims. The Court therefore will approve the settlement.

## IV. MOTION FOR TURNOVER

A. Section 542(a) Turnover Standards.

11 U.S.C. § 542(a) provides that: "an entity ... in possession, custody, or control, during the case, of property [of the estate] ... shall deliver to the trustee ... such property or the value of such property[.]" A debtor has an affirmative duty to turn over property of the estate, without first requiring a demand or turnover motion by the trustee. *Rupp v. Auld (In re Auld),* 561 B.R. 512, 518 (10th Cir. BAP 2017).

Parties who possess estate property at any point post-petition are required to turn it over to the trustee. If a party dissipated estate property, then he or she must then turn over the value thereof. *In re Ruiz*, 455 B.R. 745, 751-52 (10th Cir. BAP 2011). The evidence shows that all tax refunds were at one point deposited in Debtor's accounts post-petition.

Moreover, the Trustee need not show that all the tax refunds were deposited in Debtor's accounts, merely that Debtor had the right to receive the property post-petition. *Nichols v. Birdsell*, 491 F.3d 987, 990 (9th Cir. 2007); *In re Graves*, 609 F.3d 1153, 1158 (10th Cir. 2010) (§ 542(a) allows the trustee to obtain possession of property that the debtor has the right to possess).

B. Property of the Estate.

Debtor argues that the tax refunds are not property of the estate and therefore not subject to turnover. Section 541 provides that property of the estate includes "all legal or equitable

interests of the debtor in property as of the commencement of the case." The scope of § 541 is broad and should be generously construed. *Williams v. Jones (In re Montgomery)*, 224 F.3d 1193, 1194 (10th Cir. 2000).

Generally, all tax refunds based on pre-petition income or loss are estate property, whenever paid. *See Barowsky v. Serelson (In re Barowsky)*, 946 F.2d 1516 (10th Cir. 1991), *citing Kokoszka v. Belford*, 417 U.S. 642, 648 (1974). *See also Official Committee of Unsecured Creditors v. PSS Steamship Company, Inc. (In re Prudential Lines, Inc.)*, 928 F.2d 565, 573 (2d Cir. 1991) (NOLs are estate property).

Here, $138,578 in tax refunds were for pre-petition years and based on pre-petition losses. Although paid post-petition, the tax refunds are property of the estate.

    C.    <u>Report of No Distribution</u>.

Debtor argues that he is not required to turn over the tax refunds because the chapter 7 trustee at the time, Linda Bloom, issued a no-asset report. This seems to be a species of equitable estoppel argument. The argument lacks merit. Even if equitable estoppel could apply to a "no asset" report, the Court would not apply it here; had Debtor disclosed $138,000 of collectible pre-petition tax refunds, the Trustee would never have issued a no asset report.

Further, the report of no distribution was not an act of abandonment. *In re Hawk*, 524 B.R. 706, 716 (Bankr. S.D. Tex. 2015), *aff'd*, 556 B.R. 788 (S.D. Tex. 2016), *aff'd*, 2017 WL 3048605 (5th Cir. July 19, 2017), *citing In re Bucala,* 464 B.R. 626, 634 (Bankr. S.D.N.Y. 2012). Section 554 dictates when estate property is abandoned. None of the conditions in §554 were satisfied, so there was no abandonment. The case was not closed, and no order of abandonment has been entered.

Finally, a trustee cannot abandon assets that were not scheduled, or about which he or she was unaware. *In re Hawk*, 524 B.R. at 716. Debtor's schedules, which only vaguely mentioned possible NOLs, did not put the Trustee on notice about the tax refunds.

D.   Conclusion.

Debtor received, post-petition, about $138,578.38[5] in pre-petition tax refunds. The tax refunds were estate property, over which Debtor had post-petition possession or control. The value of the tax refunds should be turned over to the Trustee.

V.   ORDERS

The Court will enter separate orders consistent with this opinion on each of the three motions.

_____
Hon. David T. Thuma
United States Bankruptcy Judge

Entered:  August 16, 2017

Copies to:  Counsel of Record

---

[5] Since Debtor filed his petition on December 30, 2014, only 99.72602% of his 2014 tax refund is property of the estate. The Court subtracted $46.92 from the amount required to be turned over.